LJW/2010R01123

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 11-208 (SRC) |
| v. | : | |
| | : | 22 U.S.C. § 2778 |
| SIXING LIU, | : | 22 C.F.R. § 120, *et seq.* |
| a/k/a "Steve Liu" | : | 18 U.S.C. § 1001 |
| | | 18 U.S.C. § 2 |

**INDICTMENT**

The Grand Jury in and for the District of New Jersey,

sitting in Newark, charges:

**COUNT 1**
**(Exportation of Defense Article/**
**Technical Data Without a License)**

**FACTUAL BACKGROUND**

1.   At all times relevant to this Indictment:

(a)   Defendant SIXING LIU was a citizen of the People's

Republic of China ("PRC") who lawfully resided in the United

States beginning in or around 1993.  Defendant SIXING LIU held a

Ph.D. in electrical engineering granted by a university in the

PRC.

(b)   L3 Communications was company based in the United

States, with numerous domestic and international offices, that

provided military and aerospace technology, among other things,

to components of the United States government, including the

Department of Defense ("DoD").

(c)   Space & Navigation was a New Jersey-based division of L3 Communications that, among other things, developed precision navigation devices and other innovative components for DoD, including Technology Program No. 1.

(d)   Technology Program No. 1-A was a precision navigation device substantially similar to Technology Program No. 1 that L3 Communications developed, in consultation with DoD, for intended sale to other militaries who were approved by the United States Department of State ("State Department") to purchase it.

(e)   Under the U.S. Arms Export Control Act, Title 22, United States Code, Section 2778 ("AECA" or the "Act"), and its corresponding regulations, the International Traffic in Arms Regulations ("ITAR"), certain information generated by L3 Communications concerning the design, operation, accuracy, and performance of Technology Program No. 1 and Technology Program No. 1-A could not be exported from the United States without an export license from the State Department.

**LEGAL BACKGROUND:  THE ARMS EXPORT CONTROL ACT/**
**INTERNATIONAL TRAFFIC IN ARMS REGULATIONS**

2.   The AECA authorizes the President to control the export of defense articles and services from the United States.  The Act requires every person engaged in the business of exporting defense articles from the United States to obtain a license or other approval from the State Department.  22 U.S.C.

2

§ 2778(b)(1)(A)(I).  The regulations promulgated pursuant to the Act, known as the ITAR, define exporting to include, among other things:  "[s]ending or taking a defense article out of the United States in any manner . . . . ."    22 C.F.R. § 120.17.

3.    The ITAR defines a defense article and service to be any item on the United States Munitions List ("USML") contained in the regulations.  The USML sets forth twenty-one categories of defense articles that are subject to export licensing controls by the State Department's Directorate of Defense Trade Controls ("DDTC").  22 C.F.R. § 121.1.

4.    Also covered under the USML is "technical data" relating to the listed defense articles, which includes information "which is required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of defense articles."  22 C.F.R. § 120.10.

5.    Category XII on the Munitions List includes "Fire Control, Range Finder, Optical and Guidance and Control Equipment," including technical data included in the document titled "Summary of Simulation Analysis for [Technology Program No. 1-A]" discussed herein.

6.    Unless specifically exempted, persons engaged in the export of defense articles covered by the USML must be registered with the DDTC, and must apply for and receive a valid license or

3

other approval to export the defense article from the United States.  22 C.F.R. § 123.1(a).

7.    With regard to countries against which the United States has an arms embargo, and which are listed in 22 C.F.R. Section 126.1, the ITAR provides that:

> It is the policy of the United States to deny licenses
> and other approvals for exports and imports of defense
> articles and defense services, destined for or
> originating in certain countries . . . .  This policy
> . . . applies to countries with respect to which the
> United States maintains an arms embargo (e.g., . . .
> [People's Republic of] China. . .) . . . .

22 C.F.R. § 126.1(a).

## DEFENDANT SIXING LIU'S EMPLOYMENT WITH SPACE & NAVIGATION

8.    From March 30, 2009 until November 30, 2010, defendant SIXING LIU worked as a senior staff engineer for Space & Navigation, a division of L3 Communications.  During his employment with Space & Navigation, defendant LIU was part of a research and development team working on Technology Program No. 1-A.

9.    Space & Navigation educated and trained its employees, including defendant SIXING LIU, regarding the requirements of United States export control laws and the proper handling of sensitive proprietary and export-controlled information.  This

4

training covered provisions of the ITAR that prohibit the
unlicensed export of items and data contained in the United
States Munitions List ("USML").  Furthermore, L3 Communications
and Space & Navigation included prominent advisories on the pages
of its work product documents warning that they may include
information covered by the ITAR.

10.  Space & Navigation provided defendant SIXING LIU with a
desk-top computer work station intended for use only at Space &
Navigation's secure facility in New Jersey and did not issue him
a laptop computer or give him permission to transfer documents
from that facility to any personal computer he might own.

11.  L3 Communications required employees with access to
sensitive proprietary and export-controlled information,
including defendant SIXING LIU, to abide by corporate policies
concerning the secure handling of that information.  Those
policies, among other things, required employees to obtain
approval from designated corporate officers before disseminating
that information, in whole or in part, outside of L3
Communications.  L3 Communications and/or Space & Navigation did
not approve defendant SIXING LIU to present information related
to its programs to any outside person or audience.

**DEFENDANT'S 2009 AND 2010 PARTICIPATION IN**
**STATE-SPONSORED TECHNOLOGY CONFERENCES IN THE PRC**

12.    On or about October 15, 2009, defendant SIXING LIU traveled from New Jersey to the PRC for a period of approximately twelve days before returning to the United States at Newark Liberty International Airport on or about October 27, 2009. During that trip, defendant SIXING LIU presented information at a technology conference in Chongqing, PRC.

13.    According to the conference's web site, the event was titled "The Third Annual International Workshop on Innovation and Commercialization of Micro and Nanotechnology" ("ICMAN 2009"), and was organized and sponsored by several entities of the PRC government.

14.    Defendant SIXING LIU's presentation at ICMAN 2009 was titled ""Micro-Navigator for Spacecraft with MEMS Technology" and related to technology that defendant SIXING LIU and/or his co-workers at Space & Navigation were implementing in projects for the United States government.

15.    On or about November 12, 2010, defendant SIXING LIU traveled from New Jersey to the PRC for a period of approximately seventeen days before returning to the United States at Newark Liberty International Airport on or about November 29, 2010. During that trip, defendant SIXING LIU presented information at a technology conference in Shanghai, PRC.

6

16.   According to the conference's web site, the event was titled "The Fourth Annual International Workshop on Innovation and Commercialization of Micro and Nanotechnology" ("ICMAN 2010"), and was organized and sponsored by several entities of the PRC government.

17.   Defendant SIXING LIU's presentation at ICMAN 2010 was titled "MEMS for Aeronautics and Space" and related to technology that DEFENDANT SIXING LIU and/or his co-workers at Space & Navigation were implementing in projects for the United States government.

18.   The ICMAN 2009 and ICMAN 2010 conferences were multi-day events with detailed agendas, organizing committees, and sponsors.  Attendees of the conferences, dressed in business attire, gathered in a large hall appointed with banners and floral arrangements, where presenters delivered their remarks and presentations from a podium flanked by projection screens.

19.   Agendas for the ICMAN 2009 and ICMAN 2010 conferences listed defendant SIXING LIU as a representative of L3 Communications.

20.   Web pages for the ICMAN 2010 conference listed defendant SIXING LIU as a Co-Chair of the event's International Committee.

7

**DEFENDANT'S EXPORTATION TO THE PRC OF ITAR-CONTROLLED DATA**

21. As alleged above, on or about November 12, 2010, defendant SIXING LIU traveled from the United States, leaving from Newark Liberty International Airport, to the PRC. On or about November 29, 2010, defendant SIXING LIU returned from the PRC aboard a flight that arrived at Newark Liberty International Airport.

22. During a Customs and Border Protection secondary inspection of defendant SIXING LIU's luggage on or about November 29, 2010, officers found defendant SIXING LIU to be in possession of a non-work issued laptop computer. A later search of the contents of the laptop computer revealed hundreds of documents belonging to L3 Communications relating to several of its technology programs. Among those items were numerous documents marked as containing either sensitive proprietary information or ITAR-controlled data, or both.

23. One such document is titled "Summary of Simulation Analysis for [Technology Program No. 1-A]" and contains the words "L3 Communications Proprietary/ITAR Controlled" at the bottom of each page.

24. Also revealed by the search of the laptop computer were numerous documents and images relating to and depicting defendant SIXING LIU spanning a period of years, which collectively indicated that defendant SIXING LIU possessed that computer over

8

an extended period of time and brought the computer with him when he departed the United States for the PRC on or about November 12, 2010.

25.    The search of the laptop computer also uncovered a fourteen-page resume for defendant SIXING LIU, which was written in Chinese and English, that described defendant SIXING LIU's work on, among other things, technology programs at L3 Communications for DoD.  In one such instance, with respect to Technology Program No. 1, the resume provides:    "Providing primary and back-up, precise position, elevation and direction for FA cannon/rocket/missile units" and "In production for the U.S. Army and USMC."

**DDTC CERTIFICATIONS REGARDING THE DATA**
**EXPORTED BY DEFENDANT AND HIS LICENSE HISTORY**

26.    On or about February 10, 2011, the DDTC certified that the document identified in paragraph 23 of this Indictment contained technical data that is covered by USML Category XII ("Fire Control, Range Finder, Optical and Guidance and Control Equipment").

27.    On or about March 8, 2011, the DDTC certified that a diligent search of license history records did not reveal any record of a registration application by defendant SIXING LIU with respect to the exportation of defense articles and services, brokering, or any other regulated activities regarding the import, export, or transfer of any defense articles or defense

9

services outside of the Untied States.  The DDTC also certified that its inquiry did not reveal any application for an export license by defendant SIXING LIU.  Finally, the DDTC certified that its inquiry did not reveal that an export license or any other written approval had been granted to defendant SIXING LIU.

28.  On or about November 12, 2010, at Newark Liberty International Airport, in the District of New Jersey, and elsewhere, defendant

**SIXING LIU,**
**a/k/a "Steve Liu"**

did knowingly and willfully export and attempt to export to the People's Republic of China defense articles, designated as "Fire Control, Range Finder, Optical and Guidance and Control Equipment" on the United States Munitions List, Title 22, Code of Federal Regulations, Section 121.1, Category XII, namely, technical data contained in the document titled "Summary of Simulation Analysis for [Technology Program No. 1-A]", without having first obtained from the United States Department of State, Directorate of Defense Trade Controls, a license for such export.

In violation of Title 22, United States Code, Section 2778(b)(2) & 2778(c), Title 22, Code of Federal Regulations, Section 120, et seq., and Title 18, United States Code, Section 2.

10

COUNT 2

### (False Statements to Federal Agents on
### November 29, 2010)

29.   Paragraphs 1 to 27 this Indictment are realleged as if set forth in full herein.

30.   At all times relevant to this Count, a department of the United States – the United States Department of Homeland Security, through Immigration and Customs Enforcement ("ICE") – was empowered to investigate suspected violations of the AECA and the ITAR.

31.   In connection with his attempt to enter the United States at Newark Liberty International Airport on or about November 29, 2010, defendant SIXING LIU was interviewed by Special Agents of ICE – who were conducting an investigation regarding suspected violations of the AECA and the ITAR – during which defendant SIXING LIU made several materially false and misleading statements:

(a)   When asked what was the purpose of his travel to the PRC, defendant SIXING LIU stated, in substance and in part, that it was to visit his family in the PRC, and when asked if there was any other reason for his travel, defendant SIXING LIU falsely responded in the negative.

11

(b)   When asked about an ICMAN 2010 access badge bearing the word "VIP" found in his possession during the border inspection, defendant SIXING LIU falsely stated, in substance and in part, that the conference was small and was not formal.

(c)   When asked about the word "VIP" on the access badge, defendant SIXING LIU falsely stated, in substance and in part, that it meant nothing and was not special.

(d)   Despite the Special Agents' questioning pertaining to his role at the ICMAN conference and the meaning of the VIP access badge, defendant SIXING LIU failed to inform the agents that he had been an organizer of the ICMAN 2010 conference, specifically a Co-Chair of the International Committee.

32.   On or about November 29, 2010, at Newark Liberty International Airport, in the District of New Jersey, and elsewhere, in a matter within the jurisdiction of the Executive Branch of the Government of the United States, defendant

**SIXING LIU,**
**a/k/a "Steve Liu"**

knowingly and willfully made materially false, fictitious, and fraudulent statements and representations as described above in paragraph 30.

In violation of Title 18, United States Code, Section 1001(a)(2).

12

**COUNT 3**
**(False Statements to Federal Agents on**
**November 30, 2010)**

33.  Paragraphs 1 to 27 of this Indictment are realleged as if set forth in full herein.

34.  At all times relevant to this Count, a department of the United States – the United States Department of Homeland Security, through Immigration and Customs Enforcement ("ICE") – was empowered to investigate suspected violations of the AECA and the ITAR.

35.  On or about November 30, 2010, defendant SIXING LIU was interviewed by Special Agents of ICE – who were conducting an investigation regarding suspected violations of the AECA and the ITAR – at their office in Newark, New Jersey, during which defendant SIXING LIU made several materially false and misleading statements:

(a)  When asked if he had worked on any projects for DoD while employed by L3 Communications, defendant SIXING LIU stated, in substance and in part, that he worked on Technology Program No. 1 and falsely stated, in substance and in part, that he never knew what the final application of his work would be.

(b)  When asked about his role at the ICMAN 2009 conference, defendant SIXING LIU falsely stated, in substance and in part, that it was very informal and was only as small get-together of colleagues and friends.

13

36.   On or about November 30, 2010, at Newark, in the District of New Jersey, and elsewhere, in a matter within the jurisdiction of the Executive Branch of the Government of the United States, defendant

**SIXING LIU,**
**a/k/a "Steve Liu"**

knowingly and willfully made materially false, fictitious, and fraudulent statements and representations as described above in paragraph 34.

In violation of Title 18, United States Code, Section 1001(a)(2).

A TRUE BILL

FOREPERSON

PAUL J. FISHMAN
UNITED STATES ATTORNEY

14

CASE NUMBER: 11-208 (SRC)

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

SIXING LIU,
a/k/a "Steve Liu"

# INDICTMENT FOR

22 U.S.C. § 2778
22 C.F.R. § 120, et seq.
18 U.S.C. § 1001
18 U.S.C. § 2

A True Bill,

_____
Foreperson

**PAUL J. FISHMAN**
*UNITED STATES ATTORNEY*
*NEWARK, NEW JERSEY*

L. JUDSON WELLE
*ASSISTANT U.S. ATTORNEY*
*(973) 645-2735*